**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, JUDGE**

Criminal Case No. 07-cr-00427-LTB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

LARY LEE SPEAKMAN,

        Defendant.

_____

## ORDER

_____

This case is before me on the question whether an egg scrambled by an arbitration panel can be unscrambled.  I conclude that it cannot.  The Tenth Circuit Court of Appeals reversed the restitution order I entered against Defendant, Lary Lee Speakman, during sentencing on his guilty plea to one count of wire fraud.  After consideration of the parties' stipulations, briefs, and the oral arguments presented to me on December 29, 2010, I VACATE the portion of Defendant's sentence that orders him to pay restitution to Merrill, Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch").

## I.  BACKGROUND

Defendant worked at Merrill Lynch as a financial consultant and, in that capacity, managed the accounts of his wife, Carolyn Speakman.  Despite lacking the authority to do so, Defendant transferred money and securities from Mrs. Speakman's account, without her permission or authorization, numerous times from 1999 through 2005.

On October 23, 2007, a Grand Jury indicted Defendant on twelve counts of criminal activity related to his unauthorized transfers of money from his wife's accounts at Merrill Lynch. On June 13, 2008, Mr. Speakman pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343.  Thereafter, on June 13, 2008, I entered judgment against Defendant and sentenced him to forty-seven months of imprisonment, with three years of supervised release, and a special assessment of $100.00.  In addition, I ordered to him to pay $194,205.77 to the Crime Victims Fund and  $1,225,000.00 in restitution to Merrill Lynch.

## II.  RULING ON APPEAL

Defendant appealed my restitution order to the Tenth Circuit Court of Appeals.  On February 2, 2010, the Tenth Circuit reversed the restitution order benefitting the Crime Victims Fund on the basis that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, only authorizes courts to order a payment when the victim assigns his or her restitution interest to the Crime Victims Fund.  Since the victim in this case renounced her interest in restitution, the Tenth Circuit reversed the restitution order as it pertained to the Crime Victims Fund.  *See U.S. v. Speakman*, 594 F.3d 1165, 1176 (10th Cir. 2010).

As to the restitution ordered in favor of Merrill Lynch, the amount assessed was the result of a National Association of Securities Dealers (NASD) arbitration proceeding – initiated by Mrs. Speakman against both Merrill Lynch and Defendant – in which they were found to be jointly liable to Mrs. Speakman for $1,225,000 in compensatory damages.  As a result of the arbitration award, Merrill Lynch paid Mrs. Speakman $1,225,000 and, thus, I determined that Defendant was obligated to pay Merrill Lynch $1,225,000 in restitution at sentencing.  On appeal, the Tenth Circuit reversed the restitution order in favor of Merrill Lynch on the basis that

the Government did not make the requisite showing of proximate cause related to the

determination of whether Merrill Lynch was a "victim" under the Mandatory Victim Restitution

Act.  *See* 18 U.S.C. § 3663A(a)(2); *U.S. v. Speakman, supra,* 594 F.3d at 1172.   In so doing, the

Tenth Circuit remanded the case for this court to "perform further fact-finding as to whether Mr.

Speakman proximately caused Merrill Lynch's harm." *Id.* at 1174.

On remand, Defendant and the Government stipulate that, at the relevant time, NASD

operated a dispute resolution program under which a dispute between an investor and a securities

firm or between an investor and a person associated with a securities firm could be resolved by a

panel of arbitrators.   In the summer of 2005, Mrs. Speakman filed NASD Dispute Resolution

Case No. 05-02896 seeking damages from Merrill Lynch, Defendant, and another Merrill Lynch

employee, Michael J. Hecht.  Mrs. Speakman's claims were based on substantially the same

facts that formed the basis for the charges in this case, that is, the unauthorized transfers of funds

from her accounts at Merrill Lynch.

The contested issue now before me is the basis for the NASD determination of liability in

the arbitration hearing.  When reviewing my restitution order, the Tenth Circuit determined that

Merrill Lynch is entitled to restitution if it can be defined as a "victim" under the Mandatory

Victim Restitution Act, which requires a determinations that it was "directly and proximately

harmed *as a result of*" Defendant's fraud.  *U.S. v. Speakman, supra*, 594 F.3d at 1170 (quoting

18 U.S.C. § 3663A(a)(2)).   The Court went on to hold that when determining whether Merrill

Lynch was proximately harmed by Defendant's fraud against his wife, the standard is "if either

there are no intervening causes, or, [as relevant here] if there are any such causes, if those causes

are directly related to the Defendant's offense." *Id*. at 1772.

3

The Tenth Circuit then noted that in this case there were two intervening causes between the fraud and the loss suffered by Merrill Lynch. First, the initiation of arbitration against Merrill Lynch, of which the Court found "little difficulty in concluding that the arbitration was 'directly related to the offense conduct' because Mrs. Speakman initiated the arbitration directly in response to Mr. Speakman's fraud in an attempt to recover the money he stole from her." *Id.* at 1172.      The second intervening cause between the fraud and Merrill Lynch's harm is the question of the basis for the arbitrators' ruling that Merrill Lynch was liable in the NASD arbitration.   However, the record – including the written arbitration award – did not specify the basis or rationale for Merrill Lynch's liability.  As a result, the Tenth Circuit found that the Government had not met its burden of establishing that Merrill Lynch was a victim of Defendant's fraud because it "cannot be sure if Merrill Lynch's liability was based on *respondeat superior* principles, negligence in supervising Mr. Speakman, or some other basis entirely." *Id.* at 1172.

The Court then discussed what, in this case, would constitute proximate cause.  It held that "[i]f Merrill Lynch's liability was premised on a *respondeat superior* theory, then there really is no second intervening cause, as employers are generally held liable on that theory not because of any act or omission on their part, but rather because the employee was acting within the scope of his duty . . . [and] we would thus have little trouble concluding that Merrill Lynch was directly and proximately harmed by Mr. Speakman's fraud."  Likewise, "[a]lthough a closer question, we also think that Merrill Lynch's harm would still be directly related to Mr. Speakman's fraud even if Merrill Lynch was held liable in the arbitration because of its own negligence in supervising Mr. Speakman."  This is because "unlike a volitional act, negligent

4

supervision would not be a cause by itself" and thus "cannot be an intervening cause." *Id.*

In contrast, the Court noted that "[i]t is possible that the NASD arbitration found Merrill Lynch liable for other reasons, possibly for an intentional harm that Merrill Lynch itself committed."   Therefore, if "Merrill Lynch was liable to Mrs. Speakman because of its own volitional acts" it would not have been proximately harmed "because it was its own actions that gave rise to its liability, and thus Merrill Lynch's harm would not be directly related to Mr. Speakman's fraud." *Id.* at 1174.  Specifically, the Court ruled that "we are satisfied that any intentional act that Merrill Lynch may have taken would be a superseding cause of its liability that would break the causal chain between Mr. Speakman's actions and Merrill Lynch's loss sustained in the arbitration." *Id.* (*citing Gaines-Tabb v. ICI Explosives, USA, Inc*., 160 F.3d 613, 620 (10th Cir. 1998); *Restatement (Second) of Torts* § 448).

As a result, the Tenth Circuit vacated the portion of Defendant's sentence in which he was ordered to pay restitution to Merrill Lynch, and the case was remanded for me to perform further fact-finding, in light of the forgoing guidance, as to whether Defendant proximately caused Merrill Lynch's harm.

## III.  ARGUMENTS

On remand, the Government is unable to provide me with direct evidence of the basis for Merrill Lynch's liability in the NASD arbitration award.  Instead, the Government argues that Mrs. Speakman submitted only a limited number of claims against Merrill Lynch at the NASD hearing and, as such, the arbitrators could have only found that Merrill Lynch was liable based on those submitted claims.  The Government further asserts that all the claims submitted and pursued by Mrs. Speakman were based in either vicarious liability or supervisory negligence, as

opposed to any independent liability for intentional harm.  Therefore, the Government maintains

that Defendant proximately caused the harm incurred by Merrill Lynch when being found liable

by the arbitrators.

In response, Defendant asserts that Mrs. Speakman did, in fact, argue claims against

Merrill Lynch for its own wrongful acts; specifically, Defendant maintains that Mrs. Speakman

claimed that Merrill Lynch breached its fiduciary duty to her by failing to adhere to its own

policies related to overseeing her accounts.  Such activities constitute Merrill Lynch's own

"volitional acts" that, in turn, gave rise to its own separate and distinct  liability.  Because the

arbitration award could have been based, in whole or in part, on this theory of liability,

Defendant asserts that the Government has failed to meet its burden of proving, by a

preponderance of the evidence, that Defendant proximately caused the harm incurred by Merrill

Lynch.

## IV.  FINDINGS

The task assigned to me by the Tenth Circuit is to unscramble an egg.  But ultimately the

Government bears the daunting burden to do so.

The parties have provided six stipulated exhibits relating to the arbitration proceedings.

Exhibit #1 is Mrs. Speakman's initial Statement of Claim, Exhibit #2 is her subsequent Amended

Statement of Claim, and Exhibit #3 is her Hearing Brief.   Exhibit #4 is the NASD arbitration

award.  Exhibit #5 is a list of the parties and witnesses who attended the hearing, and Exhibit #6

is a transcript of the closing arguments.

In her pleading before the NASD arbitration panel, Mrs. Speakman argued that Merrill

Lynch is liable for her losses for various reasons.  She argued vicarious liability under both agency principles and the doctrine of "controlling person."  In addition, she argued that Merrill Lynch breached the fiduciary duty that it owed her, with respect to the handling of the assets in her accounts, and that Merrill Lynch was liable for violating its own internal rules and policies. The arbitration award lists Mrs. Speakman's causes of action as follows: "breach of fiduciary duty, failure to supervise, *respondeat superior,* control person liability, outrageous conduct, violation of federal and state securities laws, fraudulent misrepresentations, negligence and violation of the Colorado Consumer Protection Act."  [Ex. #4]

In her hearing brief, Mrs. Speakman argued that Merrill Lynch ignored its own policies and ignored many red flags regarding the misappropriations.  She asserted that it did not provide heightened supervision of her accounts, that it did not initiate required mandatory contact with her, and that it violated other policies "relating to the ARMOR reports, employee questionnaires, address changes, etc." [Ex. # 3]   In closing arguments, Mrs. Speakman's attorney reiterated the various ways he believed the evidence showed that Merrill Lynch acted, or failed to act, resulting in inadequate oversight of Mrs. Speakman's accounts.  Such actions included ignoring excessive withdrawals and other red flags of misuse, failing to directly contact her when such contact was mandatory, ignoring evidence of check kiting, allowing checks to be picked up regularly in contravention to policy, etc.   [Ex. #5]

## V.  CONCLUSION

The Tenth Circuit's opinion indicated that if Merrill Lynch was deemed liable to Mrs. Speakman based on a *respondeat superior,* or even negligent supervision theory, then the harm of the arbitration award against it would be directly related to Defendant's fraud.   On the other

end of the spectrum, if the arbitration award liability was based on "an intentional harm that Merrill Lynch itself committed" or if "Merrill Lynch was liable to Mrs. Speakman because of its own volitional acts," it would not have been proximately harmed "because it was its own actions that gave rise to its liability, and thus Merrill Lynch's harm would not be directly related to Mr. Speakman's fraud." *Id.* at 1174.

The question is, then, whether Mrs. Speakman's claim that Merrill Lynch breached its fiduciary duty to her was premised upon principles of negligent supervision (resulting in harm directly related to the fraud) or on Merrill Lynch's distinct liability for its own actions (resulting in an intervening cause where the harm is not directly related to the fraud). The Government argues that Mrs. Speakman's breach of fiduciary duty claim is grounded in Merrill Lynch's negligent supervision of Defendant. While this may be true to some extent, the stipulated pleadings provided to me reveal that Mrs. Speakman clearly argued to the arbitrators that Merrill Lynch was separately liable for its failure to follow its own policies related to its management and oversight of her accounts. I disagree with the Government to the extent it argues that Mrs. Speakman based her argument solely on what Merrill Lynch failed to do, or what it should have done, and that she did not suggest that it "independently engaged in any conduct that constituted a breach."

First, I reject the Government's contention that Merrill Lynch must have committed an intentional or tortious act in order to rise to the level of a superseding cause of its liability that would break the causal chain between the fraud and Merrill Lynch's loss. Furthermore, my review of the pleadings and argument made to the arbitrators reveals that Mrs. Speakman asserted that Merrill Lynch made affirmative decisions about the oversight of her accounts that

8

would give rise to liability for breach of fiduciary duty.   Although she admitted that Merrill Lynch was unaware of Defendant's fraud, her arguments advanced in arbitration included that Merrill Lynch made affirmative decisions that would have resulted in liability.

Because a claim was raised and argued that could have been the basis of the arbitration award of liability against Merrill Lynch based on its own "volitional acts," I conclude that the arbitration award assessing liability against Merrill Lynch was not necessarily based *only* on either a theory of *respondeat superior* or negligent supervision as argued by the Government. Multiple theories were presented to the arbitration panel to support Mrs. Speakman's claim against Merrill Lynch, some of which could, but some of which could not render Merrill Lynch a "victim" under the rubric of the Tenth Circuit.  But, on the limited record before me, I am left to wonder and cannot say by a preponderance which does.  So, the evidence is in equipoise and the Government has failed to met its burden to show, by a preponderance of the evidence, that Merrill Lynch is a "victim" as defined by Mandatory Victim Restitution Act, 18 U.S.C.A. § 3663A(a)(2), and *U.S. v. Speakman*, 594 F.3d 1165, 1176 (10th Cir. 2010).

ACCORDINGLY, I VACATE the portion of Defendant's sentence that orders him to pay to Merrill Lynch $1,225,000 in restitution.

Dated: December __30__, 2010, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE

9